# Shallenberger *v.* Standard Sanitary Manufacturing Company, Appellant.

*Contract—Building contract—Stipulation for bond—Rescission—Damages.*

A building contract sealed and delivered stipulated for a satisfactory bond. The contractor without delivering the bond started on the work. Subsequently on the contractor being requested to furnish a bond he told the owner's manager that application had been made to a trust company in another state for a surety bond in the stipulated sum. To this statement the manager said, "All right." Two weeks later the owner gave the contractor three days' notice to present the bond, or the work would be given to another contractor. Five days thereafter the bond was tendered, but the owner's manager stated that they intended to do the work themselves, and did not wish to make the change again. The contractor was denied permission to proceed with the work on the premises. He thereupon brought suit. *Held* (1), that the case was for the jury as to whether there was a reasonable compliance by the contractor with the owner's demand; (2) that it was not error to refuse consideration of the fact that the bond tendered was the bond of a foreign corporation, inasmuch as the owner did not put its refusal of acceptance on any such ground; and (3) that the damages were to be ascertained by taking the entire cost of the building to the contractor and deducting this sum from the contract price.

BROWN, POTTER and ELKIN, JJ., dissent.

Argued Oct. 27, 1908. Appeal, No. 102, Oct. T., 1908, by defendant, from judgment of C. P. No. 3, Allegheny Co., Nov. T., 1905, No. 996, on verdict for plaintiff in case of F. E. Shallenberger v. Standard Sanitary Manufacturing Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Assumpsit for breach of contract. Before KENNEDY, P. J.

The facts are stated in the opinion of the Supreme Court.

At the trial counsel for defendant offered to prove by a witness, that the plaintiff was not financially able to carry out his contract; that he was not attending to the contract in any way,

was wasting time and delaying, this for the purpose of showing why he was given what otherwise might be construed to be a short notice to deliver his bond, and to show that the plaintiff could not perform his contract.

Objected to as incompetent and irrelevant, for the reason that any lack of financial responsibility of the plaintiff was supplied and intended to be supplied by the bond to be given, and that the time had not arrived in this contract, or any of the subcontracts, when the financial responsibility of this plaintiff could be brought into question.

Objection sustained.   Exception. [2]

Defendant presented these points:

7. Under the writing dated April 27, 1905, prepared as the contract between the parties, no operative contract could exist between the parties until the delivery and acceptance of the bond provided for therein, and the plaintiff, having failed to produce the bond in accordance with the notice of June 5, 1905, the contract did not become operative, and the plaintiff cannot recover thereon.  *Answer:* Refused. [1]

5. If the jury should find for the plaintiff, they cannot take into consideration in establishing the damages, the profits which plaintiff would have realized had he completed his contract, basing such profits on the difference between his contract price with the defendant company and the prices at which he had let subcontracts to others.  *Answer:* Affirmed and explained.  This point is affirmed, I have so instructed you substantially.  You are not bound by those prices that these subcontractors had given him, and to which he had testified, but you are to find out what would be the reasonably fair price for the work to be done, and if you find the prices of these subcontracts are reasonably fair, then you take those as a basis, but not otherwise. [14]

Verdict and judgment for plaintiff for $4,000.   Defendant appealed.

*Errors assigned* were (1, 14) above instructions, quoting them; (2) rulings on evidence, quoting the bill of exceptions; and (16) refusal of binding instructions for defendant.

*John P. Hunter,* of *Lyon, Hunter & Burke,* for appellant.— The covenant of the plaintiff to give a bond constituted a condition precedent and plaintiff acquired no right under the contract until said bond was given. Defendant had a right to terminate contract at any time for failure to give bond: Smith v. Molleson, 148 N. Y. 241 (42 N. E. Repr. 669); Flynn v. Dougherty, 26 Pac. Repr. 831; Dills v. Dougherty, 36 Ky. 253; Roberts v. Brett, 11 H. L. C. 337.

The court erred in excluding testimony on the part of defendant to show plaintiff's financial irresponsibility and his neglect of the work as bearing on the reasonableness .of the length of time given by said notice of June 5: Hickman v. Shimp, 109 Pa. 16; Sims v. Everhardt, 102 U. S. 300.

The court erred in instructing the jury to find whether the time from the receipt of the notice by plaintiff until June 8, was a reasonable time: Zuck v. McClure, 98 Pa. 541; Evesson v. Ziegfeld, 22 Pa. Superior Ct. 79; Tindal v. Brown, 1 T. R. 167; Morgan v. McKee, 77 Pa. 228.

The court erred in refusing to allow testimony on the part of the defendant to show that the surety company upon plaintiff's bond was not registered in this state. The court erred in holding and so charging that the measure of damages was the difference between the contract price and the fair prices of defendant's subcontracts: United States v. Speed, 75 U. S. 77.

*James Balph,* with him *R. A. Balph,* for appellee.—Acquiescence in acts inconsistent with a clause of forfeiture will dispense with a right to claim it: Lauman v. Young, 31 Pa. 306; McNish v. Reynolds, 95 Pa. 483.

Where strict performance of a contract has been waived neither party can suddenly take advantage of his right to the literal performance and rescind for the failure of such performance: Forsyth v. North American Oil Co., 53 Pa. 168; Whitlow v. Moore, 114 Pa. 451.

OPINION BY MR. JUSTICE STEWART, January 4, 1909:

It is not correct to say that the contract here was incom-

plete and inoperative so long as the bond stipulated for had not been given by the contractor. With the sealing and delivery of the written agreement the contract at once became operative, and thereafter, for a breach by either of the parties in any of its terms, the other would have appropriate remedy. One of the terms required that the contractor should "furnish satisfactory Trust Company bond in the sum of twenty thousand dollars ($20,000) for the faithful performance of all and singular his covenants, and for the protection of the parties of the first part against mechanics' liens, and all damages, losses, delays, or other injury sustained by reason of the failure of the said party of the second part to keep and perform all his covenants."

By the contract executed April 27, 1905, plaintiff undertook for a consideration of $64,692 to remove from a certain lot in the city of Allegheny owned by defendant company, the buildings then standing and occupied by the defendant company, and erect thereon a pattern shop and storage warehouse, and a warehouse building, and complete the same by September 1, following. Without having given the bond required, plaintiff was allowed to enter at once upon the work. He proceeded without delay to tear down and remove the old buildings, and prepare the ground for constructive work. The defendant would have been entirely within its rights, had it denied possession of the premises until bond had been given; and for a failure of the plaintiff to furnish the bond within a reasonable time, it would have been justified in rescinding the contract. But possession having been given, and the work having been entered upon, while the defendant's right to demand the bond thereafter continued, as well as its rights to rescind for default by the plaintiff, yet rescission could only be justified as proper regard was paid to the rights of the plaintiff under conditions existing at the time. In a communication addressed to plaintiff under date of May 19, Mr. Reed, general manager for the defendant company, requested that the latter file his bond with either the secretary of the company or its architect. The day following the receipt of this letter, the plaintiff testified that he called on Mr. Reed, and told him that

he had made application to a trust company in West Virginia for a surety bond, but because of the absence of a party whom he wished to see in connection with it, he was delayed; that he would get it as soon as possible, and would not ask any money on the contract until the bond had been delivered to the company. To this representation Mr. Reed replied, "All right." The plaintiff thereafter continued his work under the contract. By June 5 he had the ground cleared, had eight or ten car loads of lumber on the ground, and was ready to proceed with the erection of the buildings. On that day defendant gave the plaintiff a written notice which reads as follows: "Under the terms of the agreement dated April 27, 1905, prepared for construction of buildings in Allegheny City for S. S. M. Co., it is provided that you shall give a satisfactory bond in the sum of $20,000 for the faithful performance of the work. As the contract cannot be closed till this is done, you are hereby notified that unless the bond is delivered by Thursday, June 8, 1905, by twelve o'clock noon, we shall let the work to another contractor.". If, as here asserted, the contract had not been closed, the defendant was under no obligation to the plaintiff with respect to it; it was nothing but an open negotiation from which either could withdraw at pleasure. This was a strange theory to adopt, and may explain in a measure the summary process attempted by the defendant. As we have said the contract was an executed one, binding upon both parties, which neither could rescind except for justifying reasons. Treating the communication, however, as a notice that the company would rescind the contract, unless the bond were furnished by noon of June 8,—and the plaintiff so understood it,—the one question is, was the time allowed under the notice reasonable in view of all the circumstances of the case? The plaintiff testified that at the time the notice was received his application for a surety bond of the Citizens' Trust & Guarantee Co. of Parkersburg, W. Va., had been approved by the company. Under date of June 8—though it must have been the 9th—he wrote to the defendant advising that this bond had been executed by the trust company the day previous, June 8, and would arrive by due course of mail.

On either the next day or that following, plaintiff tendered this bond to the defendant's general manager, Mr. Dawes, who replied, "Well, it is all right, but as we have made the change now, we intend to do the work ourselves, and don't wish to make the change again." Thereupon, plaintiff was denied permission to proceed with his work on the premises. It is complained that the court submitted to the jury the question of reasonable notice to plaintiff of the intention to rescind, instead of deciding it as a matter of law. This assumes that there was no dispute as to the facts on which plaintiff relied to justify or excuse his delay in furnishing the bond. It would unduly extend this opinion if we were to refer in detail to the many and marked contradictions which appear in the testimony. Let a single instance suffice. In determining whether a three-day limit for the filing of the bond was affording the plaintiff a reasonable time, what preceded the giving of the notice was as much for consideration as what followed. That the reasonableness of the time depended on the situation and circumstances of the parties at the time, is true; but whatever in the conduct of either had contributed to the situation so far as concerned the other, was proper matter of inquiry. The plaintiff immediately after the first written request for a bond, had told the defendant's general manager that application had been made to the trust company in Parkersburg for a surety bond in the stipulated sum. If in that conversation the manager told plaintiff what the latter says he did, a waiver of the right to require prompt delivery of a bond, in consideration of plaintiff making no pressing demand for money or any payment on his contract before delivery of the bond, might well be inferred. If there were such waiver, then when the notice of June 5 was given, plaintiff could not be said to be in default. A three days' notice to one who in open disregard of his covenants, and in spite of repeated demands for compliance, was in default, might well be regarded as reasonable; while such a requirement would be wholly unreasonable with respect to another whose delay had been with the acquiescence of the party having a right to the bond. Did the conversation occur as plaintiff says, or was it as the general man-

ager testified? Certainly what passed between these parties was relevant, and it was wholly for the jury to determine what the conversation was, and its effect. So, too, in regard to other relevant facts. The facts being undetermined a submission to the jury was unavoidable.

From what we have said as to the real and only issue in the case, it results that no error was committed in rejecting defendant's offer to show plaintiff's financial condition. Whatever that condition was, it did not prevent plaintiff from procuring the required bond and tendering it to defendant on the day following defendant's rescission. The question was whether that was a reasonable compliance with defendant's demand. Nor was it error to refuse consideration of the fact that the bond tendered by plaintiff was a bond of a foreign corporation. Defendant did not put its refusal of acceptance on any such ground, but solely on the ground that the bond had not been tendered in time. Not only so, but when defendant, weeks before, was advised that plaintiff had applied to this company for a surety bond to meet the requirements of his contract, no such objection was made. This fact may not have required the company to accept such bond; but if rejected finally for any such reason, the plaintiff would have been entitled to further time to procure another.

The measure of damages the jury were instructed to observe was a correct one. Plaintiff had made subcontracts for two-thirds of the material required for the construction of the building, and offered testimony to show what additional expenditure would be required to complete the buildings in accordance with the contract. The appropriation of these subcontracts by the defendant company is conclusive as to the cost of the material embraced, and the testimony as to the additional cost required was convincing to the jury. They were instructed by the court to estimate from these data the value of plaintiff's contract, first ascertaining from the evidence what the entire cost of the building would be to the plaintiff, and deducting this sum from the contract price. If the defendant had no right to rescind the contract plaintiff was entitled to compensation; and the measure of damages

adopted was the only one, depending upon the sufficiency of the evidence, by which this could be determined. The assignments of error are overruled.

Judgment affirmed.

MR. JUSTICE POTTER, dissenting:

I am unable to agree with the view of the majority of the court in this case. An essential requirement of the proposed contract was that the contractor should furnish bond in the sum of $20,000, to insure the faithful performance of the work. This was not one of the things to be done or furnished as the work progressed; but it was a prerequisite; something required in advance of the performance of the work which it was to guarantee. Some six weeks passed after the signing of the agreement, and no such bond was furnished by the contractor. The defendant company might well have refused permission to the contractor to enter upon the premises until he had given the security he had agreed to furnish. But instead of standing sharply upon its rights in this respect, it indulged the plaintiff further by allowing him to make a start upon the work, at the same time warning him to file the bond within three days. This would have been ample time in which to procure and file the bond, if the financial condition of the plaintiff was sound or his credit good. But instead of procuring a bond with satisfactory sureties, as required by the agreement, the plaintiff finally offered as a compliance with his obligation, the bond of a foreign corporation not authorized to do business in the state of Pennsylvania. Such a bond was of course unsatisfactory to the defendant company, and it refused to accept it, or to allow plaintiff to proceed further with the work. In so doing the defendant was acting clearly within its rights under the contract. Surely it was not obliged to run the risk of placing a large and important contract in the hands of an irresponsible contractor, who had failed to furnish the bond agreed upon. Under the admitted facts of the case I can see nothing which should properly have been submitted to a jury. The result was to give to the plaintiff the profits of a contract which he never carried out in accordance with its terms, and

for work which he never performed, and which he had no right to even attempt to perform until he had furnished the bond. I would reverse the judgment.

BROWN and ELKIN, JJ., concur in this dissent.